STATE *ex rel.* MARY A. DOANE, Administratrix of the estate of Noble T. Doane, Petitioner, *v.* DANIEL M. DRAPER, State Auditor, Respondent.

1. *Clerk of the House of Representatives — Copying Journal — Compensation.* The compensation provided for in section 20, chapter 7, Gen. Stat. 1865, for copying the laws and journal of the House of Representatives for the press, is not a part of the legal perquisites of the office of clerk of the House. Even if the clerk is appointed to perform that duty by a resolution of the House, his appointment is not as such officer, and his compensation is independent of his compensation as such officer. And where there had been two clerks, one succeeding the other, and the last one, being appointed to copy said journal and prepare it for the press, simply gathered up and arranged the loose rolls or rough minutes, as written out by both clerks from day to day, and delivered them to the printer, the first clerk was not entitled to any part of the compensation for copying and preparing the journal for the press by virtue of having written out a part of the rolls or rough minutes, which were afterward used as copies for the press. His writing out these minutes was only part of his duties as clerk, for which he was compensated by his salary as such.

*Petition for Mandamus.*

*Lay & Belch,* for relator.

I. Ministerial acts of the State auditor will be controlled by the Supreme Court. (Moses on Mand. 85–6; 10 Wis. 578; 5 Tex. 471.)

II. The election of Doane and his acceptance of the office was a contract to perform the duties and receive all the fees and emoluments of the office. His right was here vested, and the repeal of the different sections of the statutes would not have the effect of divesting that right. (Sedg. on Stat. and Const. Law, 133; 1 Hill, 324.) The constitutions of this State and of the United States forbid that effect or construction to be given to a law. But this was by resolution of the House, and cannot change, alter, or affect the law. It was perfectly competent for the House to resolve that Colby should receive additional compensation for his services, but this would in no wise impair the right of Doane. It could not and did not intend to take Doane's money to pay Colby.

III. By section 16, chapter 7, Gen. Stat. 1865, it is the duty of the House of Representatives to cause to be prepared a copy of the journal for the press, etc. (Gen. Stat. 1865, p. 81.) Section 20 of said chapter, page 82, provides that the person copying shall receive the compensation. Section 28, chapter 20, Gen. Stat. 1865, p. 148, provides that the chief clerk shall furnish such copy for the press. Under the evidence of Colby and Bond, the copy made by Doane was used by the public printer.

IV. Although these provisions are found in different sections, and do not refer to each other, they are statutes *pari materia*, and must be taken as one system, and as explanatory of each other. (Sedg. on Stat. and Const. Law, 247.)

*R. F. Wingate*, for respondent.

The relator seeks, by *mandamus*, to require the respondent to audit an account charged to have accrued to N. T. Doane, in his lifetime, as chief clerk of the House of Representatives.

I. It is denied that the account ever accrued to Doane, as alleged by the relator; but it is affirmed, on the contrary, that the same, under and by virtue of a resolution of the House of Representatives made in pursuance of the statute in that behalf made and provided, accrued to J. C. S. Colby, in whose favor a certificate of indebtedness had been issued by the State auditor covering the account charged to have accrued to said Doane, and which was for copying and preparing the journal of the House of Representatives for the press. The fees for copying the journal and preparing the same for the press rightfully belong to such person as may perform such service under the direction of the Senate or House of Representatives, and do not attach to the office of the secretary of the Senate or chief clerk of the House of Representatives. (Gen. Stat. 1865, chap. 7, §§ 16, 20, pp. 81–2.)

II. J. C. S. Colby, under a resolution of the House of Representatives, was required to and did copy and prepare for the press the journal of the House. (House Jour. Adj. Sess. 1868, p. 770.)

III. The House, by a decided vote, refused to said Doane,

15—VOL. XLIII.

State ex rel. Doane, Adm'x, v. Draper.

deceased, any portion of the perquisites for copying and preparing its journal for the press at the adjourned session of 1868. (See last cited page of said journal.) Doane was removed, and Colby made chief clerk of the House, March 6, 1868. (House Jour. Adj. Sess. 1868, pp. 486, 488, 498.)

CURRIER, Judge, delivered the opinion of the court.

The relator's intestate, Noble T. Doane, was chief clerk of the House of Representatives during its adjourned session of 1868, from January 7 to March 6, when he was superseded by J. C. S. Colby, who was appointed to the place and discharged the duties of the office from that time to the close of the session, on the 26th day of March. On the 25th day of March, the House, by resolution, and in pursuance of chapter 7, section 16, of the General Statutes, as the resolution declares, directed Colby, as its chief clerk, "to copy and prepare for the press the journal of the House" for the session. The State auditor was required, by the same resolution, to draw his warrant for the service thus to be rendered, in accordance with section 20 of the same chapter. On the 28th of March Colby presented to the auditor an account for services rendered under the resolution, amounting to $1,911.88, which was allowed, and, in the absence of funds, a certificate of indebtedness was issued in adjustment of the demand.

The General Statutes, chapter 7, section 16, provide that "it shall be the duty of the Senate and House of Representatives to cause the journal of their respective houses to be copied and prepared for the press without delay, and, at the close of the session, to deliver the same (the journal) to the secretary of State;" and section 20 of the same chapter provides that "there shall be allowed to the person copying the laws or journals for the press the sum of fifteen cents for every hundred words." The payment to Colby is justified under the resolution of the House already mentioned, and under those provisions of the General Statutes in relation to the publication of the laws and journals. On the other hand, the relator insists that, inasmuch as Doane was chief clerk from January to March, he is entitled to compensation for the supposed copying of the proceedings during this period, as a

perquisite and legal incident of his office, and cites in support of this position the twenty-eighth section of the statute establishing the office of public printer (Gen. Stat. 1865, p. 148, § 20), which is in these words : "The secretary of the Senate and the chief clerk of the House of Representatives shall each furnish to the public printer, every day during the session of the General Assembly, a copy of the journal of his house for the day preceding, till the whole journal shall be thus copied and delivered." The relator's claim having been duly presented to the auditor for allowance, amounting to $1,283.87, and the auditor having rejected it, this court is now asked to issue its writ of *mandamus* commanding the auditor to audit and adjust the demand.

On the hearing, witnesses were examined, and the following facts disclosed. Each day's proceedings of the House are written out by the chief clerk, or some of his assistants, on sheets of paper which are fastened together in the form of a roll, and read to the House the next day. On being approved, this roll is passed to a clerk, who makes a fair copy of it in a book which is called the journal, the roll itself then being filed away. And so the business proceeds from day to day to the close of the session, when the "journal" is delivered to the secretary of State, as the statute provides (Gen. Stat. 1865, ch. 7, § 16), as the permanent original record of the proceedings of the House. This is the book referred to in section 20 of the same chapter as the "journal" to be copied for the press at fifteen cents per hundred words. No copy of this book was ever made by any one, so far as appears. But Colby, under the resolution of the House of the 25th of March, gathered up and arranged the aforesaid rolls, or rough minutes, and delivered them over to the public printer, from which the printed journal is composed. This is all that Colby appears to have done under the resolution.

The making up of the rolls or rough minutes of the proceedings of the House from January 7 to March 6, as before described, forms the foundation of the relator's claim. Is there anything in the statute which authorizes the auditor to audit and allow this demand, and draw his warrant on the treasury for its payment?

A clear statement of the facts of the case seems to supersede the necessity of argument or exposition. The House employs clerks for the express purpose of having a systematic statement of its proceedings written up and preserved, and rewards them in the way of a *per diem* compensation.

The statute (Gen. Stat. 1865, p. 83, § 4) provides that "the secretary of the Senate and the chief clerk of the House shall each receive seven dollars per day, including six days after the adjournment of the General Assembly; and every other clerk employed by either House shall receive five dollars per day," for their compensation. There is, in our opinion, no better legal ground for claiming, as a perquisite of the office, extra and specific compensation for making and preserving the minutes of the proceedings of the House during its sessions, than there is for claiming such compensation for reading these minutes to the House after they are made up. The matter comes to this : The general law (ch. 7, § 16) provides that the House shall "cause" its journal to be prepared for the press, without specifying the agency that shall be employed; and the House, appropriately enough, selected its chief clerk; and the clerk, to save the trouble and expense of copying the journal, used the accumulated rolls — being the literal originals of the journal — and drew pay for the number of words they contained, as for fresh copies from the journal itself.

The twenty-eighth section of the act establishing the office of public printer has no just bearing on this question. That concerns the printer, and does not affect the *per diem* or other compensation of the clerks of the House or Senate. Had Doane by himself and assistants furnished to the printer from day to day a copy of the daily proceedings, it would have been but the performance of a duty which their relations to the House imposed, and for which they received compensation as the law provides. But no such copies were so furnished to the printer. The Legislature has seen fit to fix seven dollars per day as a suitable compensation to the chief clerk of the House for his daily services during the session of the General Assembly; and we find nothing in the statute which leads us to conjecture that it intended to provide the

further allowance of more than twenty dollars a day as a mere perquisite and incident of the office for constructive copying.

The application for a peremptory *mandamus* is refused. The other judges concur.